# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 10, 2020

Lyle W. Cayce
Clerk

No. 20-10241
Summary Calendar

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MICHAEL RYAN MITCHAN,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:19-CR-70-2

Before HAYNES, WILLETT, and HO, *Circuit Judges*.

PER CURIAM:*

Michael Ryan Mitchan pleaded guilty to possession with intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). He was sentenced to 192 months'

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-10241

imprisonment and five years' supervised release. On appeal, he challenges the district court's calculation of the drug quantity attributable to him.[1]

Drug quantity is a factual finding that we review for clear error. *See United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005). A district court may adopt the facts from a presentence report (PSR) "without further inquiry *if* those facts have an adequate evidentiary basis with sufficient indicia of reliability *and* the defendant does not present rebuttal evidence." *United States v. Dinh*, 920 F.3d 307, 313 (5th Cir. 2019) (citation omitted). "The standard for reliability is not meant to be onerous; indeed, even uncorroborated hearsay can support a relevant conduct finding." *United States v. Barfield*, 941 F.3d 757, 762 (5th Cir. 2019). And the district court can consider the statements of coconspirators even if they "are somewhat imprecise" when calculating drug quantity. *United States v. Kearby*, 943 F.3d 969, 974 (5th Cir. 2019) (internal quotation marks omitted).

Mitchan first argues that the district court erred by including 6 pounds of methamphetamine in the calculation based on a statement that one of his codefendants, Kenneth Robert Smith, made to law enforcement. Specifically, Smith said that Mitchan once sold 6 pounds of methamphetamine to Francis Leo Stadler, Jr., another codefendant in the case. Mitchan argues that Smith's statement lacked enough detail to be considered reliable and that it was refuted by other evidence. But Mitchan fails to show that Smith's statement was implausible in light of the whole record. *See id.* at 975. Smith worked as Mitchan and Stadler's driver, and could reasonably be presumed to have knowledge of their transactions. Further, multiple sources indicated that Mitchan was a high-volume drug

---

[1] Mitchan also contends that he should have been allowed to confront witnesses at sentencing, but he concedes that this argument is foreclosed. *See United States v. Mitchell*, 484 F.3d 762, 776 (5th Cir. 2007). He seeks only to preserve the issue for further review.

dealer. Mitchan's girlfriend revealed that he obtained gallon-sized bags of methamphetamine from a source in Austin a few times a week. Mitchan himself told law enforcement that he supplied Stadler with $1,000 quantities of methamphetamine at a time, that he had traveled to Forth Worth to purchase methamphetamine, and that he was set to obtain several more pounds from a new source in Houston. This lends credence to Smith's statement that Mitchan sold 6 pounds at once.

Mitchan's so-called rebuttal evidence is unpersuasive. He contends that Smith's statement was contradicted by Stadler, who told law enforcement that the most methamphetamine he ever received from a supplier was only half a pound. However, Stadler's statement was made several months before Smith's, so it is plausible that Stadler subsequently increased the amount of methamphetamine he purchased at a time.

Mitchan also argues that the district court erred by including 4.5 pounds of methamphetamine in the calculation based on Stadler's post-arrest statement that in just one month he bought $20,000 to $25,000 worth of methamphetamine from Mitchan at $300 to $325 per ounce. The PSR estimated that the transactions involved 4.5 pounds of methamphetamine. Mitchan concedes that drug quantity may be extrapolated. *See Dinh*, 920 F.3d at 313. But he argues that Stadler's statement is unreliable. Stadler provided specific enough dollar amounts to support the PSR's estimate. And, based on the record evidence that Mitchan was dealing in large quantities, those dollar amounts and the resulting 4.5-pound estimate are plausible.

Accordingly, Mitchan has not demonstrated clear error with respect to either the 6 pounds of methamphetamine attributed to him based on Smith's statement or the 4.5 pounds based on Stadler's statement. *See Betancourt*, 422 F.3d at 246.

AFFIRMED.